<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL A. ROSKO, | Case No. 19-16325 (SDW) (LDW) |
| Plaintiff, | |
| v. | **OPINION** |
| RUSHMORE SERVICE CENTER, LLC, | |
| Defendant. | June 11, 2021 |

**WIGENTON**, District Judge.

Before this Court is Defendant Rushmore Service Center, LLC's ("Defendant") Motion for Summary Judgment ("Motion") in response to Plaintiff Michael A. Rosko's ("Plaintiff") Complaint, brought pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons below, Defendant's Motion is **GRANTED.**[1]

## I.    BACKGROUND AND PROCEDURAL HISTORY

On August 10, 2017, Plaintiff opened a credit card account with First Premier (the "Account"). (D.E. 32-1 ("Br.") ¶ 1.) When Plaintiff opened the Account, he signed a credit card

---

[1] Although Plaintiff requested Summary Judgment several times in his brief, (*see* D.E. 35 ("Opp.") at 2, 6, 8, 19), Plaintiff did not timely and properly file a Motion for Summary Judgment. On February 26, 2021, Magistrate Judge Leda D. Wettre ordered that any dispositive motion be filed before March 26, 2021. (D.E. 31.) Plaintiff did not file a Motion for Summary Judgment before March 26, 2021 and failed to oppose Defendant's motion on or before April 5, 2021. Plaintiff was subsequently granted an extension of time to file a response until April 19, 2021. (D.E. 33; D.E. 34.) However, Plaintiff did not seek leave to extend the deadline to file an affirmative motion. Therefore, Plaintiff's improper requests are denied.

agreement (the "Agreement") containing the written terms and conditions governing the Account. (*Id.* ¶ 2.)  Shortly after, Plaintiff stopped making the minimum payments on the Account and became delinquent.  (*Id.* ¶ 3; D.E. 35-1 ¶ 4.)   First Premier retained Defendant to provide collections services on the Account.  (Br. ¶ 4.)  On June 6, 2019, Plaintiff contacted First Premier to ask if it would delete the tradeline associated with the Account, which had a $610.63 balance due at the time. (*Id.* ¶ 5; D.E. 35-1 ¶ 6.)  The First Premier representative told Plaintiff that it could not fulfill his request because it went against First Premier policy.  (Br. ¶ 6; D.E. 35-1 ¶ 6.)  Later that day, Plaintiff contacted Defendant with the same question, to which Defendant's representative responded that Defendant did not report to credit reporting agencies and could not delete the tradeline.  (Br. ¶¶ 7-8; D.E. 35-1 ¶ 4 (asserting that Defendant's representative stated that First Premier "would be made aware" of Plaintiff's offer).)

While on the phone with Defendant, Plaintiff scheduled a debit card payment to pay the past due amount on the Account for the precise amount due pursuant to the Agreement.  (Br. ¶ 9.) However, approximately one week later, Plaintiff called Defendant to cancel the pending debit card payment, saying that he would send a check instead.  (*Id.* ¶ 11.)  Plaintiff sent a check for $610.63 (the "Check"), the precise amount owed, with language in the memo line stating, "pay for deletion of entire tradeline" ("the Note").  (*Id.* ¶¶ 13-14; D.E. 35-1 ¶ 11 ("Plaintiff paid Rushmore … the full amount of the debt.").)  In compliance with Defendant's normal practice to add the account number and strike all other lines with numbers on them, Defendant's representative crossed out the Note and deposited the Check.  (Br. ¶ 15-16.)

On August 5, 2019, Plaintiff filed this Complaint, alleging that Defendant violated the Fair Debt Collection Practices Act ("FDCPA") when it cashed the Check without honoring the Note. (D.E. 1 ("Compl.") ¶¶ 1, 12, 15.)  On September 12, 2019, Defendant filed its Answer to the

Complaint and raised fifteen affirmative defenses.  (D.E. 6.)  On March 26, 2021, Defendant filed this Motion.  (D.E. 32.)  Plaintiff opposed on April 26, 2021.  (D.E. 35.)  On May 3, 2021, Defendant timely replied.  (D.E. 36. ("D. Br."))

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is only "material" for purposes of summary judgment if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant, who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions, or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  When considering a motion for summary judgment, a district court should believe the non-moving party's evidence and draw all justifiable inferences in its favor. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).  Further, the

nonmoving party is required to "point to concrete evidence in the record that supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which. . . .[it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322–23.

## III.   DISCUSSION

To prevail on an FDCPA claim, a plaintiff must show that (1) he is a "consumer" within the meaning of the statute who was harmed by violations of the FDCPA, (2) the defendant is a "debt collector," (3) the defendant's challenged practice involves an attempt to collect a debt, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Here, while the parties agree that Plaintiff is a consumer and Defendant is a debt collector, they disagree as to whether (1) Defendant, when it cashed the Check, attempted to collect a debt under the FDCPA, and whether (2) Defendant's actions constituted a violation of an FDCPA provision. (*See* Opp. at 2-3, 5-6; D. Br. at 4-7.)

Under the FDCPA, for a debt collector's communications to constitute an attempt to collect a debt, the debt collector must be acting in pursuit of repayment of the debt owed. *See Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir. 1987); *cf. Piper v. Portnoff Law Assocs, Ltd.*, 396 F.3d 227, 233 (3d Cir. 2005). Plaintiff alleges that cashing the Check, which he willingly sent to pay an undisputed debt, amounts to an FDCPA violation because the statute's remedial nature requires broadly interpreting the definition of "debt collection." (*See* Opp. at 7.) However, Plaintiff's interpretation is not supported by the statute or any Third Circuit authority. Although, when assessing FDCPA claims, courts in the Third Circuit use the "least sophisticated debtor"

standard, which is lower than "simply examining whether particular language would deceive or mislead a reasonable debtor," *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) (quotation omitted), debtors cannot "disregard responsibilities or adopt 'bizarre or idiosyncratic interpretations. . . .'" *Devito v. Zucker, Goldberg & Ackerman, LLC*, 908 F. Supp. 2d 564, 569 (D.N.J. 2012) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000)). Therefore, while Plaintiff may be correct to assert that the definition of prohibited debt collection activity is not limited to the specific categories of activity listed in section 1692e, (Opp. at 7), his claim that the FDCPA could encompass liability for cashing a Check that Defendant sent, of his own accord, stretches the statutory language beyond reason. This is particularly true where, as here, Plaintiff reached out to Defendant to pay the Account balance, and Defendant merely cashed the Check that Plaintiff voluntarily mailed. (*See* Br. ¶¶ 7-15.)

Since Defendant did not undertake an attempt to collect debt in a manner that amounts to a cognizable FDCPA claim, no genuine question of material fact remains as to whether Defendant could be liable under the statute. However, even if Defendant's actions could somehow create potential liability under the FDCPA, Plaintiff's Complaint still fails, because Defendant's actions were not "deceptive" or "misleading" under the statutory definitions of those terms. Under the FDCPA, debt collectors are prohibited from using "any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A communication is deceptive or misleading if "it can reasonably be read to have two or more meanings, one of which is inaccurate or contradictory to another requirement." *Devito*, 908 F. Supp. 2d at 571 (citing *Wilson*, 225 F.3d at 354); *see also Cadillo v. Stoneleigh Recovery Assocs.*, Civ. No. 17-7472, 2017 WL 6550486 at *3 (D.N.J. Dec. 21, 2017). In this case, Plaintiff alleges that he had paid his balance "with the understanding that Defendant would deliver on the tradeline

5

deletion," but Defendant took the "money on its own terms." (Compl. ¶ 12; Opp. at 9.) However, even under the least sophisticated debtor standard, the debtor's understanding of the debt collector's communication must have "a quotient of reasonableness." *Wilson*, 225 F.3d at 354 (quotation omitted).

Here, Plaintiff's understanding that the Note would result in a tradeline deletion was not reasonable. Both Defendant and First Premier had communicated to the Plaintiff before he sent the Check that he could not condition payment of his debt on the tradeline deletion, (Br. ¶¶ 5-8), and Plaintiff's assertion that the Note created an obligation for Defendant to honor this condition is not supported by law.[2] Therefore, because Defendant never indicated to Plaintiff that it would honor the request for the tradeline deletion, Defendant did not engage in a deceptive or misleading practice by cashing the Check. For similar reasons, Defendant's actions were not unfair or unconscionable. *See* 15 U.S.C. § 1692f; *Corson v. Accts. Receivable Mgmt., Inc.*, Civ. No. 13-01903, 2013 WL 4047577 at *7 (D.N.J. Aug. 9, 2013). Plaintiff voluntarily paid Defendant the precise amount of debt he owed, as authorized by the Agreement he signed with First Premier, and there is no indication that Defendant engaged in any activity designed to coerce Plaintiff into making his payment. (*See* Br. ¶¶ 7-11, 13-14); *see also Potoczny v. Aurora Loan Servs.*, 636 F.

---

[2] Plaintiff's opposition also raises several arguments regarding breach of contract—namely, that the Note created a new contract, which Defendant accepted and breached when it cashed the Check, and, in the alternative, that Defendant was unjustly enriched when it cashed the Check. (Opp. at 10-16.) Since Plaintiff did not file an action for breach of contract, this issue is not currently before the Court. However, even if this Court were to consider Plaintiff's arguments on the merits, they would fail. First, there was no mutual assent to a new contract because Defendant clearly indicated, before Plaintiff sent the Check, that it would not honor a request for a tradeline deletion, and Defendant crossed out the Note before the Check was cashed. (Br. ¶¶ 7-8, 15.) Second, cashing the Check did not constitute accord and satisfaction, because the amount of money Plaintiff owed on the Account was not in question. *See Nevets C.M., Inc. v. Nissho Iwai Am. Corp.*, 726 F. Supp. 525, 536 (D.N.J. 1989). Third, under the Agreement, Plaintiff was not entitled to unilaterally change the terms of his debt, meaning that he could not amend the amount owed to include the value of the tradeline deletion. (*See* Br. ¶ 2; D.E. 33, Gilson's Dec., Ex. A.) Lastly, to prevail on an unjust enrichment claim, Plaintiff must show that he conferred a benefit on Defendant that would be unjust for Defendant to retain. *See, e.g., Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011). Defendant, in cashing the Check, was not conferred an undue benefit, since it merely retained the amount of money that Plaintiff had been obligated to pay. (*See* Br. ¶ 14.)

App'x 115, 119 (3d Cir. 2015).  Accordingly, there is no genuine issue of material fact regarding Defendant's alleged unfairness or unconscionability.[3]

### IV.     CONCLUSION

For the reasons set forth above, Defendant's Motion is **GRANTED**.   An appropriate Order follows.

s/ *Susan D. Wigenton*

**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Parties
          Leda D. Wettre, U.S.M.J.

---

[3] Plaintiff cites no relevant case law supporting his position that Defendant violated New Jersey criminal law when cashing the Check, instead focusing only on cases where Defendant improperly used garnishment procedures or judgment liens.  (Opp. at 18.)  Therefore, this Court will not  conclude that Defendant committed any of the alleged violations.